THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WENDY IWAI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. |
| | ) | |
| ROUND LAKE AREA SCHOOLS COMMUNITY UNIT SCHOOL DISTRICT #116, | ) ) ) | |
| | ) | |
| Defendant. | ) | **JURY DEMAND** |

**COMPLAINT AT LAW**

Plaintiff, WENDY IWAI ("Plaintiff"), by her attorneys, JAMES KELLY LAW FIRM, with her lead counsel James M. Kelly, and for her Complaint against Defendant, ROUND LAKE AREA SCHOOLS COMMUNITY UNIT SCHOOL DISTRICT #116 ("Defendant"), states:

**I. PRELIMINARY STATEMENT**

1. This is an action for an award of damages, declaratory and injunctive relief, attorney's fees, and other relief on behalf of Plaintiff, who has been harmed by Defendant's discriminatory employment practices during her time of employment with Defendant.

2. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et.seq.* as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981(a) ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. § 12101 *et. seq.* ("ADA"), and the Illinois Human Rights Act, 775 ILCS 5/2-101 *et. seq.*

1

## II. JURISDICTION AND VENUE

3. The Court has jurisdiction in the Northern District of Illinois pursuant to 28 U.S.C. §§ 1331 and 1391 as Plaintiff's claims are substantively based on federal questions pursuant to Title VII and the ADA.

4. Venue is proper in the United States District Court for the Northern District of Illinois pursuant to Title 28 of the United States Code, Section 1391(b)(2), as the events complained of occurred within this district.

5. The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1367 to consider Plaintiff's claims arising under the Illinois Human Rights Act.

6. All conditions precedent to the institution of this suit have been fulfilled and Plaintiff has satisfied all jurisdictional prerequisites to maintain this action. On July 12, 2021, a notice of right to sue was issued by the Equal Employment Opportunity Commission and this action has been filed within ninety (90) days of receipt of the notice.

## III. PARTIES

7. Plaintiff is a female and citizen of the State of Illinois residing at 21665 W. Brentwood Lane, Lake Villa, IL 60046.

8. Defendant is a school district duly organized and existing under the laws of the State of Illinois maintaining a place of business at 884 W. Nippersink Road, Round Lake, IL 60073.

9. At all times relevant, Defendant was acting through its agents, servants, and employees, who were acting within the scope of their authority, course of their employment, and under the direct control of Defendant.

10. At all times material, Defendant is and has been a "person" and employer as defined under the ADA Title VII and the Illinois Human Rights Act and is accordingly subject to the provisions of both acts.

## IV. STATEMENT OF CLAIMS

11. From about August 1, 2016, until she was forced to resign on March 12, 2021, Plaintiff was employed at the Early Education Center for the Round Lake School District.

12. From August 2016 until her resignation, Plaintiff worked as an early childhood teacher in Defendant's preschool.

13. As a teacher, Plaintiff was required to work with children 3-5 years of age which included children with developmental disabilities.

14. As a teacher, Plaintiff was noted for bringing fun, energy, and excitement to her classroom every day.

15. As a teacher, Plaintiff was noted for being extremely collaborative, working well with her related service team members and teachers' assistants, and was well respected by her colleagues.

16. On July 29, 2020, Plaintiff was granted tenure with Defendant pursuant to the provisions of the Performance Evaluation Reform Act (105 ILCS 5/24-11(d)(1)).

17. At all times relevant, Plaintiff was immunocompromised with psoriatic rheumatoid arthritis which required a treatment regimen of immune suppressor drugs.

18. At all times relevant, because of Plaintiff's status as "immunocompromised," Plaintiff was at increased risk for severe illness from COVID-19 virus.

19. In August 2020, Defendant began the school year with all employees, including Plaintiff, working remotely from their homes.

20. Beginning in January 2021, Defendant began to assess the option for all staff and students to return to in-person learning.

21. Expecting to return to in-person teaching in February of 2021, Plaintiff submitted a January 14, 2021, written request to work remotely, supported by a letter from her doctor, Dr. Diana Sandler, with the Division of Rheumatology, at Northshore University Health System, Chicago, Illinois.

22. Dr. Sandler's letter noted that, because of Plaintiff's immunocompromised state, Plaintiff was at "increased risk for severe illness from COVID-19," and even with precautions, "there is currently no way to ensure zero risk of infection in communal setting."

23. On January 25, 2021, Defendant denied Plaintiff's request to work remotely contending that the precautions in place are "sufficient" for Plaintiff to return to work.

24. On February 1, 2021, Dr. Sandler provided a second letter that indicated that Plaintiff is "currently advised to work remotely as she has an immunocompromising condition, on an immunosuppressive regimen, and is therefore advised to avoid potential exposure given her young students may not be able to adhere to strict social distancing guidelines."

4

25. On February 11, 2021, Plaintiff received her first COVID-19 vaccine.

26. On February 28, 2021, statistics showed that Defendant's zip code indicated risks for both the positivity rate and incidence rate for COVID-19 infections.

27. On March 4, 2021, Defendant denied Plaintiff's second request to work remotely and notified Plaintiff that she would be expected to return to in-person work on February 22, 2021, because sufficient precautions would be in place.

28. As early as March 4, 2021, Defendant knew that only 2 of Plaintiff's 13 students would return to in-person education in Plaintiff's morning class and 4 students of Plaintiff's 14 students would return to in-person afternoon class. All other students would attend class remotely.

29. As early as March 4, 2021, Defendant knew that Plaintiff was willing and able to continue to teach her students remotely and that two assistants would be in the classroom with the in-person students while class was in session.

30. On March 8, 2021, Plaintiff advised Carol Demski, in Defendant's Human Resources Office, that Plaintiff is "very worried about COVID" and that she does not see her "own son and grandson" because of concerns about COVID.

31. On March 8, 2021, Plaintiff requested that she be allowed to delay returning to in-person learning until April 12, 2021, because this would allow more time for her vaccine to become effective and it would also provide a two-week safety period after the entire staff and students returned from Spring break.

5

32. On March 9, 2021, Defendant's director of human resources advised Plaintiff that Defendant would allow Plaintiff to delay her in-person return until March 29, 2021, which would allow two weeks for the vaccine to take effect, but Plaintiff's return would be the Monday after the return from Spring break.

33. On March 10, 2021, the principal of Defendant's Early Education Center advised Plaintiff and the entire staff that the "Mask Compliance Process" for failing to wear a mask at the preschool level would not result in disciplinary action, and the preschool would not be moved to remote learning for failure to comply with the mask policy.

34. On March 10, 2021, Plaintiff asked Defendant if she could simply be suspended for the remainder of the school year.

35. On March 10, 2021, Defendant advised Plaintiff that suspension was not an option because there was no disciplinary basis for suspension and that she could have COBRA coverage for 18 months.

36. On March 12, 2021, Plaintiff asked Defendant if she could not have simply taken a leave of absence or a sabbatical.

37. On March 12, 2021, Plaintiff received her second COVID-19 vaccine.

38. On March 12, 2021, Plaintiff submitted her involuntary resignation to Defendant stating "Unfortunately, in order to maintain my health during this pandemic, I will be resigning my position as of March 12, 2021."

39. On March 15, 2021, Defendant accepted Plaintiff's involuntary resignation effective March 12, 2021.

6

## COUNT I

### ADA DISABILITY DISCRIMINATION, FAILURE TO ACCOMMODATE

40. Plaintiff incorporates and realleges paragraphs 1-39 of her Complaint as though fully set forth herein.

41. Defendant's actions, through its agents, servants, and its employees, in discriminating against Plaintiff on the basis of her actual or perceived disabilities and her record of impairment by failing to provide reasonable accommodation for her disability, constituted violations of the ADA.

42. As a direct result of the unlawful discriminatory employment practices engaged in by Defendant in violation of the ADA, Plaintiff sustained permanent and irreparable harm resulting in Plaintiff's involuntary resignation from her employment which caused her to sustain a loss of earnings, the value of certain benefits, loss of future earning power, back pay, front pay, and interest.

43. As a further direct result of the unlawful discriminatory employment practices engaged in by Defendant in violation of the ADA, Plaintiff suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## COUNT II

### ADA DISABILITY DISCRIMINATION, CONSTRUCTIVE DISCHARGE

44. Plaintiff incorporates and realleges paragraphs 1-43 of her Complaint as though fully set forth herein.

45. Defendant's actions, through its agents, servants, and its employees in discriminating against Plaintiff on the basis of her actual or perceived disabilities, and her record of impairment, by causing Plaintiff to involuntarily resign her position constituted violations of the ADA.

46. As a direct result of the unlawful discriminatory employment practices engaged in by Defendant in violation of the ADA, Plaintiff sustained permanent and irreparable harm, resulting in her involuntary resignation of her employment, which caused her to sustain a loss of earnings, the value of certain benefits, loss of future earning power, back pay, front pay, and interest.

47. As a further direct result of the unlawful discriminatory employment practices engaged in by Defendant in violation of the ADA, Plaintiff suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## COUNT III

## ILLINOIS HUMAN RIGHTS ACT, DISABILITY DISCRIMINATION
## FAILURE TO ACCOMMODATE

48. Plaintiff incorporates and realleges paragraphs 1-47 of her Complaint as though fully set forth herein.

49. Defendant's actions, through its agents, servants, and employees in discriminating against Plaintiff on the basis of her actual or perceived disabilities and her record of impairment by failing to provide reasonable accommodation for her disability constituted violations of the Illinois Human rights Act.

50. As a direct result of the unlawful discriminatory employment practices engaged in by Defendant in violation of the Illinois Human Rights Act, Plaintiff sustained permanent and irreparable harm, resulting in her involuntary termination from her employment, which caused her to sustain a loss of earnings, the value of certain benefits, loss of future earning power, back pay, front pay, and interest.

51. As a further direct result of the unlawful discriminatory employment practices engaged in by Defendant in violation of the Illinois Human Rights Act, Plaintiff suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## COUNT IV

## ILLINOIS HUMAN RIGHTS ACT, DISABILITY DISCRIMINATION CONSTRUCTIVE DISCHARGE

52. Plaintiff incorporates and realleges paragraphs 1-51 of her complaint as though fully set forth herein.

53. Defendant's actions, through its agents, servants, and employees in discriminating against Plaintiff on the basis of her actual or perceived disabilities and her record of impairment by causing Plaintiff to involuntarily resign her position constituted violations of the Illinois Human Rights Act.

54. As a direct result of the unlawful discriminatory employment practices engaged in by Defendant in violation of the Illinois Human Rights Act, Plaintiff sustained permanent and irreparable harm resulting in her involuntary resignation of her employment, which caused her to sustain a loss of earnings, the value of certain benefits, loss of future earning power, back pay, front pay and interest.

55. As a direct result of the unlawful discriminatory employment practices engaged by Defendant in violation of the Illinois Human Rights Act, Plaintiff suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

56. Plaintiff incorporates and realleges paragraphs 1–55 of her Complaint as though fully set forth herein.

Plaintiff requests that this Court enter judgment, in her favor, and against Defendant, and order that:

A. Defendant compensate Plaintiff with the rate of pay and other benefits and emoluments of employment to which Plaintiff would have been entitled had she not be subjected to unlawful discrimination.

B. Defendant compensate Plaintiff with an award of front pay.

C. Defendant pay to Plaintiff punitive damages, compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses as allowable.

D. Defendant pay to Plaintiff pre and post judgment interest, costs of suit, and attorney and expert witness fees, and any other costs as allowed by law.

E. Any other relief as is deemed just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

WENDY IWAI, Plaintiff

By: */s/ James M. Kelly*
James M. Kelly

James M. Kelly (ARDC# 6238519)
JAMES KELLY LAW FIRM
7817 N. Knoxville Avenue
Peoria, IL 61614
T: (309) 679-0900
F: (309) 679-0919
jim@jameskellylawfirm.com
*Attorneys for Plaintiff*